# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ASHLEE CLARK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 11-0664-WS-N |
| | ) |
| NORTHVIEW HEALTH SERVICES, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

The plaintiff sued the defendants for violations of the Fair Labor Standards Act ("FLSA") and for breach of contract. (Doc. 1). The federal claim asserted failure to pay overtime, while the contract claim asserted failure to pay an agreed hourly wage and mileage. (Doc. 51 at 4-6, 8). The plaintiff sought $394.94 in overtime, $394.94 in liquidated damages, $139.20 for breach of contract to pay wages, and $100.00 for unpaid mileage. (*Id*.). The jury found for the plaintiff on the federal claim in the amount of $126.68 and for the defendants on the contract claim. (Doc. 58).

The verdict left open the plaintiff's entitlement to liquidated damages and the amount of attorney's fees and costs to be awarded. The Court entered a briefing schedule on these matters, (Docs. 57), the parties filed briefs and other materials in support of their respective positions, (Docs. 59, 60, 64),[1] and these issues are ripe for resolution.

---

[1] The defendants filed two briefs concerning attorney's fees and costs. (Docs. 63, 64). The Court deems the second to supersede the first, which will not be considered.

**I. Liquidated Damages.**

Liquidated damages equal to unpaid overtime compensation are to be awarded unless the employer satisfies the Court that it acted in good faith and that it had reasonable grounds to believe it was not in violation of the Act. 29 U.S.C. §§ 216(b), 260; *accord Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008). The defendants, provided the opportunity to meet their burden, instead "give notice that, in light of the jury's verdict, they do not contest Plaintiff's entitlement to liquidated damages in an amount equal to the jury's damage award." (Doc. 60). Accordingly, the Court awards liquidated damages in the amount of $126.68, which will be added to the judgment to be entered in favor of the plaintiff.

**II. Attorney's Fees and Costs.**

"The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The parties agree that the analysis of *Hensley v. Eckerhart*, 461 U.S. 424 (1983), applies under the FLSA. (Doc. 59 at 2; Doc. 64 at 2).[2]

As the parties also agree, the starting point in this analysis is a multiplication of the hours reasonably expended by a reasonable hourly rate, the product of which is known as the lodestar. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 150 (11th Cir. 2008). The defendants challenge aspects of both the multiplier and the multiplicand.

---

[2] *Hensley* construed 42 U.S.C. § 1988, but "[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" 461 U.S. at 433 n.7. The Eleventh Circuit has applied *Hensley* in an FLSA context. *Padurjan v. Aventura Limousine & Transportation Service, Inc.*, 441 Fed. Appx. 684, 685-86 (11th Cir. 2011). Other Circuits also have applied *Hensley* to the FLSA. *E.g., Saizan v. Delta Concrete Products Co.*, 448 F.3d 795, 799 n.7 (5th Cir. 2006); *Loughner v. University of Pittsburgh*, 260 F.3d 173, 177-78 (3rd Cir. 2001); *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999); *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992).

### A. Reasonable Hourly Rates.

The plaintiff staffed this case with four attorneys. The plaintiff requests a $250 hourly rate for lead counsel Banks Ladd; $225 for partner Mary Carol Ladd; and $150 for associates Stacie Vitello and Stephanie Booth. The defendants object that the reasonableness of these hourly rates is supported only by lead counsel's affidavit testimony that he considers these rates appropriate.

The Court considered an FLSA fee petition by these lawyers earlier this year, in which the same hourly rates were claimed. *Lee v. Krystal Co.*, 2013 WL 160452 at *2-3 (S.D. Ala. 2013). The Court found Mr. Ladd's $250 hourly rate to be reasonable, based upon: (1) his qualifications as shown by the record; (2) evidence of applicable market rates; (3) the approval of this rate for Mr. Ladd by other judges in the District; and (4) the defendant's acquiescence in this rate. *Id*. at *2 & n.5. Although the plaintiff has provided no evidence of applicable market rates, the other three circumstances relied upon in *Lee* are present here. While, as in *Lee*, "the Court cautions that it is not making a definitive pronouncement that th[is] rat[e] [is] reasonable for the Mobile market," *id*., for purposes of this case the Court accepts Mr. Ladd's $250 rate as reasonable.

Ms. Ladd is a seasoned attorney, but her FLSA experience is limited. As of January 2013, she had "been engaged in the FLSA field for little more than one year." *Lee*, 2013 WL 160452 at *3. In this case Ms. Ladd has only one time entry (for 0.6 hour) more recent than October 2012. Her qualifications for purposes of this case therefore are no greater than in *Lee*. This Court in *Lee* rejected a requested rate of $225 in favor of a $175 rate. *Id*. Because her qualifications in this case are identical to those in *Lee*, the Court cannot approve as reasonable herein a rate higher than $175.

According to the Alabama State Bar website, Ms. Vitello was admitted to the bar on September 30, 2011. Her first time entry in this case was made on November 22, 2011, less than two months later. Her last entry before leaving the

firm was made on January 10, 2013. Only nine of her 94 hours were billed after the first anniversary of her admission to the bar. Mr. Ladd hints that Ms. Vitello was involved with other FLSA cases during her time in his office, but without identifying any of them. The Court's independent research reveals that Ms. Vitello was co-counsel of record in three cases[3] and that attorney's fees for her efforts were sought in four other cases.[4] Because these matters were all contemporaneous with this case, it does not appear that her experience in those cases rendered her more qualified for FLSA work in this case.

In several cases, a $150 rate has been approved for Ms. Vitello. But there is less to this than meets the eye. In *Lee*, the Court approved this rate without "making a definitive pronouncement that [it was] reasonable for the Mobile market." 2013 WL 160452 at *2 n.5. Instead, as with Mr. Ladd, the Court relied on the defendant's lack of opposition, evidence of applicable market rates, and evidence of qualifications (which, in Ms. Vitello's case, were modest). *Id*. at *2 & n.5. The evidence of market rates in *Lee* included two affidavits of respected local employment attorneys that $150 is a reasonable hourly rate for an employment lawyer having absolutely no experience as an attorney. There is no similar evidence in this case. Nor, given the defendants' explicit objection to such a rate for Ms. Vitello, (Doc. 64 at 9-11), would the Court credit such a representation without further proof.[5]

---

[3] *Williams v. Fleming*, Civil Action No. 12-0016-KD-M; *Smith v. Community Loans, Inc.*, 2013 WL 372113 at *7 (S.D. Ala. 2013); *Duran v. Bay Inn & Suites, L.L.C.*, Civil Action No. 12-0310-WS-N.

[4] *Lee*, 2013 WL 160452 at *2; *Wright v. Holifield*, 2013 WL 105768 at *3 (S.D. Ala. 2013); *Norman v. Alorica, Inc.*, 2012 WL 5452196 at *6 (S.D. Ala. 2012); *Wolff v. Royal American Management, Inc.*, 2012 WL 53036654 at *3 (S.D. Ala. 2012).

[5] According to these affidavits, a reasonable rate for an attorney with no experience practicing law is exactly the same as the reasonable rate for an attorney with five years' experience specializing in employment matters. This is but one of the implausibilities that would dissuade the Court from relying on such an affidavit in the face of defense objection.

In *Norman*, a fellow judge found $150 to be a reasonable hourly rate for Ms. Vitello because "the undersigned and other judges in the Southern District of Alabama have found $150/hour to be reasonable for attorneys *with a few years of practice*." 2012 WL 5452196 at *5 (emphasis added). Ms. Vitello, however, did not have a few years of practice experience; most of her contribution occurred in her first year of practice, and she had barely 15 months under her belt when she left the firm. In *Smith*, a fellow judge followed the reasoning of *Norman*, again without acknowledging that Ms. Vitello had much less than a few years experience. 2013 WL 372113 at *7. In *Wright*, a fellow judge simply followed *Norman*. 2013 WL 105768 at *3. In *Williams*, a fellow judge cited *Lee*, without recognizing this Court's skepticism of the requested rate. It is worth noting that, unlike in the present case, in none of these cases did the defendant object to compensating Ms. Vitello's time at $150 per hour.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *American Civil Liberties Union v. Barnes*, 168 F.3d 423, 436 (11th Cir. 1999) (internal quotes omitted). There is no evidence before the Court that Ms. Vitello possessed unusual skill or reputation, and there is no evidence before the Court that the prevailing market rate in the Mobile market during 2012 for new lawyers getting their first taste of litigation in general or FLSA litigation in particular was $150.[6]

---

[6] Mr. Ladd's interested opinion that $150 is "an appropriate rate" for Ms. Vitello, (Doc. 59, Ladd Affidavit, ¶ 9), is not evidence of the prevailing market rate for first-year FLSA lawyers but only of what he would like his firm to receive. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) ("To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – *in addition to the attorney's own affidavits* – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.") (emphasis added).

Mr. Ladd also notes that a fellow judge several years ago awarded $150 an hour to two associates with "one or two years' experience." *Wachovia Bank, N.A. v.*

The Court notes that, in *Wolff*, plaintiff's counsel sought and received an hourly rate of $100 for Ms. Vitello's time, 2012 WL 5303665 at *4, all of which was expended in the first half of 2012. Absent better evidence of the prevailing market rate, the Court concludes that, for purposes of the instant motion, $100 is a reasonable hourly rate for Ms. Vitello's time.[7]

Stephanie Booth was admitted to the bar in 2008 and had over three years experience when she made her first time entry in March 2012. In light of her experience and the defendant's lack of objection, the Court concludes that, for purposes of this litigation only, $150 is a reasonable hourly rate for Ms. Booth. *See Lee*, 2013 WL 160452 at *2 & n.5 (approving a $150 rate for Ms. Booth).

**B. Hours Reasonably Expended.**

The four lawyers' time on this matter, after counsel's exercise of billing judgment, varies widely. Mr. Ladd seeks 67.6 hours; Ms. Ladd, 16.5 hours; Ms. Vitello, 94.3 hours; and Ms. Booth, 23.9 hours, for a total of 202.3 hours.

"If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary." *Barnes*, 168 F.3d at 428 (internal quotes omitted). The defendants insist that considerable pruning remains to be performed by the Court.

---

*Wholesale Foods, LLC*, 2009 WL 5750358 at *4 (S.D. Ala. 2009) (describing *Mitchell Co. v. Campus*, 2009 WL 2567889 at **1, 17-18 (S.D. Ala. 2009)). The associates at issue in *Campus* were not the primary attorneys for the prevailing party and generated no separate discussion. Moreover, their rate was approved based on: the contractual nature of the attorney's fee obligation; hourly rates outside the Mobile market; and the complexity of the commercial case being litigated. 2009 WL 2567889 at *18. None of those factors are in play here. And, as already noted, Ms. Vitello did not have two years experience – or, with respect to 90% of her hours, even one year.

[7] The Court notes that the defendant concedes the reasonableness of a $95 rate for Ms. Vitello. (Doc. 64 at 9-10).

First, the defendants complain that the case was "over lawyered" because four attorneys were involved. (Doc. 63 at 5). As the Court noted in *Lee*, utilizing too many lawyers on a case can lead to excessive, redundant or otherwise unnecessary hours, in part because, "[w]ith so many cooks making the broth, the need for internal conferences to keep everyone on the same recipe rises dramatically …." 2013 WL 160452 at *5. But this case does not appear to be "over lawyered." Ms. Booth became involved only because Ms. Vitello left the firm.[8] The defendants do not, and could not seriously, argue that the use of an associate on a litigated FLSA case is excessive or otherwise unnecessary.

"There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman v. Housing Authority*, 836 F.2d 1292, 1302 (11th Cir. 1988). Ms. Ladd became involved only for the purpose of writing a brief in opposition to the defendants' motion for summary judgment. Since brief-writing is her forte, (Doc. 59 at 5 n.1), and since the defendants repeatedly dismiss Ms. Vitello as an inexperienced new lawyer using the case as a "training opportunity," (Doc. 63 at 10-11), they can hardly object to the plaintiff's prudent (and successful) use of Ms. Ladd to counter their dispositive motion.[9]

The defendants next assert that, even if the case was not over-staffed, Mr. Ladd and Ms. Vitello spent entirely too much time discussing the case between themselves. (Doc. 63 at 9, 11). As the Court noted in *Lee*, "[t]hese types of billings are disfavored, and are subjected to close scrutiny to prevent abuse." 2013 WL 160452 at *5. In *Lee*, the Court found more than ten hours of intra-office

---

[8] Before Ms. Vitello's departure, Ms. Booth's only billing on the case was 1.3 hours for calculating damages and preparing a document concerning them for use at deposition and trial. There is no indication that the inexperienced Ms. Vitello could have accomplished this task more efficiently.

[9] The defendants do not request the Court to cut Ms. Ladd's hours, and the Court perceives no reason to do so.

7

communication out of 133.6 total hours to be too many, but the Court did so because the case was over-staffed and because Mr. Ladd did not explain why, given his expertise, he needed to consult extensively with more junior lawyers about how to manage the case. *Id*. at *5, *6.

In this case, by the Court's count oral and written communications between Mr. Ladd and Ms. Vitello total 9.1 hours (or about 4.5 hours each) of the 202.3 total hours. Both the hours devoted to this task, and the ratio of those hours to total hours, is thus less than in *Lee*. That alone is not dispositive, but there is more. First, and as noted above, this case was not over-lawyered as in *Lee*. Second, the Court's review reflects that most entries are limited to 0.1 hour for communications between Mr. Ladd and Ms. Vitello; only once is the entry greater than 0.2 hour.[10] It is therefore unlikely that Mr. Ladd and Ms. Vitello were wasting time on their communications. Indeed, many of the 0.1 entries include such communication *plus* one or more other tasks. Third, unlike in *Lee*, there is no indication that Mr. Ladd was conversing with his first-year associate either to pontificate on the law or to seek her guidance; instead, the entries are focused on the giving of assignments and the sharing of information concerning them – precisely the communications needed to successfully shift from a partner to an associate tasks that either could perform but that the associate can accomplish more cheaply. "[I]ntraoffice communications are not per se unreasonable or unbillable [and,] [u]nder proper circumstances, they may be quite helpful in ensuring efficient staffing, coordination of attorney effort, and the like." *Lee*, 2013 WL 160452 at *5 n.11. The communications between Mr. Ladd and Ms. Vitello fall within this category; if there are any exceptions, the defendants have not identified them.

Moving on, the defendants object that there are "many entries … where routine office functions are being billed to the Defendants." (Doc. 63 at 11).

---

[10] Other entries exceed 0.1 hour but include other tasks. Usually, one of the timekeepers specified the length of the communication portion of the entry as 0.1 hour.

8

When a party seeks statutory attorney's fees "for paralegal or clerical tasks at a lawyer rate[,] [t]his practice is improper." *Lee*, 2013 WL 160452 at *6. The problem is that the sole entry on which the defendants rely to show that the plaintiff engaged in this practice in fact describes nothing that could be described as a non-lawyer task.

The defendants devote almost three pages to their insistence that the 5.4 hours Mr. Ladd billed before filing suit should be reduced to 2.0 hours. (Doc. 64 at 6-9). They do not offer to explain how counsel could possibly: (1) receive a call from a potential client and interview her on the telephone; (2) dictate a summary of same; (3) write the potential client to confirm the facts; (4) meet with the potential client; (5) prepare a memo regarding same; (6) evaluate the new client's potential claims; (7) evaluate the client's potential damages; (8) receive further information from the client regarding events following her termination; (9) research the law concerning FLSA issues specific to residential care facilities; (10) speak with the employer by telephone to advise of the claims and inquire of the reasons for the client's termination; (11) prepare a memo regarding same; (12) prepare a demand letter to the employer; (13) follow up the demand letter with another call to the employer in an effort to settle; (14) interview a key witness identified by the client; (15) prepare a memo regarding same; and (16) meet with Ms. Vitello about drafting a complaint, all in two hours.

The defendants' only other attack on Mr. Ladd's time is that he billed 0.2 hour on December 31, 2011 to conduct the same legal research he had performed on October 17, 2011. (Doc. 64 at 12). The Court cannot recall another instance in which a losing party presented an entire argument devoted to whether twelve minutes was properly billed, and the Court will not descend into that pit of minutiae.[11]

---

[11] Nevertheless, the Court must point out that the December entry is not redundant with the October entry. The October research (for 0.6 hour) was a more generalized investigation into residential care facilities, while the December entry focused on a

9

The defendants complain generally of perceived inefficiencies in Ms. Vitello's work on the case, (Doc. 64 at 9-10), but they identify nothing beyond what one would expect of a first-year associate as compared with a more experienced (and more expensive) lawyer. Such inefficiencies, if they exist, are accounted for by limiting Ms. Vitello's rate to that appropriate for one of her skill, experience and reputation. *See Barnes*, 168 F.3d at 433 n.12 ("[T]he measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done.") (internal quotes omitted).

More specifically, the defendants argue that Ms. Vitello unwisely spent 2.4 hours developing an affidavit for the plaintiff and another 1.0 hour developing an affidavit for her key witness. This, the defendants say, was a "total waste" of time, given that the case was only two months old and over half a year away from the dispositive motions deadline. (Doc. 64 at 11). But it common for prudent attorneys to tie key witnesses to an affidavit in order to minimize the risk of a later, changed story and to provide a sturdy basis for further prosecution or defense of a claim. And in this case, the plaintiff ultimately used the affidavits in her successful opposition to the defendants' motion for summary judgment. (Doc. 31, Exhibits 1, 8).[12]

As to Ms. Booth, the defendants complain that she billed 3.1 hours for developing the plaintiff's pretrial disclosures and another 4.2 hours working on the

---

particular Department of Labor fact sheet that appears not to have been included in the earlier inquiry. And, contrary to the defendants' assertion, Mr. Ladd did not in October prepare notes on his research into residential care facilities but only on his research into travel time.

[12] The defendants insist that no affidavits were actually executed before August 2012. (Doc. 64 at 11). This may be true of the versions submitted to the Court, but there is no evidence that no earlier executed version existed. Nor does it really matter whether the versions Ms. Vitello prepared in February were ever executed, since there is no evidence the plaintiff never intended to have them executed, and the defendants admit they formed the template for the ultimately filed versions. (*Id.*).

joint pretrial document. (Doc. 64 at 12). The Court agrees that, for a fourth-year associate billing at $150 an hour, these times are excessive. The Court has not seen the plaintiff's pretrial disclosures but, based on the final pretrial document, they could not have been time-intensive to prepare; the final pretrial document lists only eight witnesses (three of whom are the plaintiff, the individual defendant and her husband and the other five of whom are former co-workers, all long known), only one deposition (of the individual defendant), and only 20 exhibits, all simple and obvious. The joint pretrial document, (Doc. 51), is workmanlike but spare, Ms. Booth was responsible only for the plaintiff's portion, no time was devoted to reviewing the defendant's exhibits (since they had not been identified), and the voir dire appears canned for the FLSA cases that are the firm's bread and butter. The Court concludes that Ms. Booth's time on these activities should be reduced to 4.5 hours.

The defendants also object that Ms. Booth billed an hour for her role in preparing Mr. Ladd for the final pretrial conference. (Doc. 64 at 12). But her efforts presumably reduced the time Mr. Ladd required to prepare for the conference and so were sufficiently justified to escape judicial pruning.

Finally, the defendants also challenge Ms. Booth's billing of 8.3 hours for her attendance at the one-day trial, given that she never addressed the Court or the jury or made any other noticeable contribution. (Doc. 64 at 12-13). The Court agrees that, given the narrowness of the issues, the small number of witnesses and exhibits, and Mr. Ladd's expertise, Ms. Booth's presence at trial, however comforting it may have been to the plaintiff, resulted in excessive, redundant or otherwise unnecessary hours. *See Barnes*, 168 F.3d at 433 ("The time billed for excessive lawyers in a courtroom or conference when fewer would do, may obviously be discounted.") (internal quotes omitted). The Court will cut all but the 0.2 hour Ms. Booth charged for collecting the plaintiff's exhibits for trial.

### C. Lodestar Calculation.

The plaintiff seeks attorney's fees in the amount of $38,342.50. (Doc. 59 at 3). After reducing the hourly rate of Ms. Ladd and Ms. Vitello by $50, and after reducing Ms. Booth's time by 10.9 hours, the lodestar amount falls to $31,167.50.

### D. Adjustments to the Lodestar Amount.

"The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the results obtained." *Hensley*, 461 U.S. at 434 (internal quotes omitted). The plaintiff seeks no upward adjustment, but the defendants identify three reasons they believe downward adjustments are merited.

#### 1. Unsuccessful claim.

The defendants note that the plaintiff lost her contract claim and assert that fees cannot be awarded for time spent on unsuccessful claims. (Doc. 64 at 2, 4). "If the claims on which the plaintiff did not prevail and the claims on which he did prevail were distinctly different claims … based on different facts and legal theories, the court cannot award any fee for services on the unsuccessful claims." *Popham v. City of Kennesaw*, 820 F.2d 1570, 1578 (11th Cir. 1987) (internal quotes omitted); *accord Shannon v. Bellsouth Telecommunications, Inc.*, 292 F.3d 712, 717 (11th Cir. 2002) ("A court should not award fees for time spent on unrelated, unsuccessful claims.").[13]

The plaintiff's unsuccessful contract claim was unrelated to her FLSA claim for at least two reasons. First, her FLSA claim was limited to unpaid

---

[13] The Eleventh Circuit has sometimes, as in *Popham*, considered a reduction for unrelated, unsuccessful claims to be an adjustment to the lodestar amount. 820 F.2d at 1578. At other times, the Court has applied this reduction in determining the number of reasonable hours under the lodestar amount. *See Norman*, 836 F.2d at 1302. It appears to make no difference to the bottom line where the reduction is made.

12

overtime, while her contract claim was limited to unpaid straight time and unpaid mileage. (Doc. 51 at 8). The claims were thus based on different facts and different legal theories. Second, the contract claim is not a claim for which statutory attorney's fees are available even if the claim is successful.

In making a reduction, "the court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion." *Norman*, 836 F.2d at 1302. As the parties suggest no formula, the Court compares the dollars demanded under the FLSA claim to those demanded under the unrelated contract claim, as this is the best available evidence of how the plaintiff allocated her resources. The plaintiff demanded $789.88 under her FLSA claim (including liquidated damages) and a separate $239.20 under her contract claim. (Doc. 51 at 8). The contract claim thus represented 23% of the plaintiff's claimed damages. The Court will therefore reduce the hours claimed by each of the plaintiff's lawyers by 20%.

**2. Disparity between damages claimed and damages awarded.**

As to the plaintiff's successful FLSA claim, the defendants note that she was awarded only a third of the amount she demanded, and they argue that a further reduction in fees should result from this incomplete victory. (Doc. 64 at 2-3).[14] "[T]he most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436. "When considering this factor, we must compare the amount of damages sought to the amount awarded." *Gray ex rel. Alexander v. Bostic*, ___ F.3d ___, 2013 WL 3328918 at *6 (11th Cir. 2013). Indeed, "[w]here recovery of private damages is the purpose of … civil rights litigation, a district court, in

---

[14] The defendants identify the fraction as one fifth, but $126.68 is 32.1% of the $394.94 the plaintiff demanded in the joint pretrial document. (Doc. 51 at 8). It is possible the defendants refer to a figure mentioned in the plaintiff's initial disclosures, (Doc. 59 at 11), but since they have not submitted that document, the Court cannot consider it.

fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (internal quotes omitted).[15]

In *Popham*, the plaintiff demanded $2 million but was awarded only $30,000. 820 F.2d at 1580. The Court held that the trial court did not abuse its discretion in reducing counsel's requested fees by two-thirds in light of this disparity. *Id*. at 1581. The *Popham* plaintiff recovered only 1.5% of his requested damages, and the award fell $1,970,000 short of his demand. The disparity in this case falls far short of this extreme.

In *Villano v. City of Boynton Beach*, 254 F.3d 1302 (11th Cir. 2001), the plaintiff was awarded 22.9% of the amount he requested. *Id*. at 1307. Unlike in *Popham*, the plaintiff prevailed on every claim submitted to the jury. *Id*. The *Villano* Court stated that these differences from *Popham* "are relevant" although not so commanding that a fee reduction based on the degree of recovery would be an abuse of discretion. *Id*.

Here, the plaintiff was awarded 32.1% of the amount she requested under her FLSA claim, and she prevailed on the single FLSA claim she brought. This case thus falls comfortably within *Villano*. While *Villano* confirms the Court's discretion to reduce the fees awarded in this situation, it also preserves the Court's discretion not to do so. The Court selects the latter alternative.

In making this choice, the Court notes that the disparity between the damages claimed and the damages awarded may be viewed not only as a percentage but also in absolute terms. In *Popham*, that absolute difference reached seven figures, and in *Villano* it reached six. Here, in contrast, it is only three. To

---

[15] When the prevailing plaintiff is awarded only nominal damages, he may be entitled to no award at all. *Farrar*, 506 U.S. at 115 ("When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, [citation omitted], the only reasonable fee is usually no fee at all."); *accord Gray*, 2013 WL 3328918 at *6-7. The plaintiff, however, was not awarded merely nominal damages but actual damages.

be precise, the plaintiff recovered $268.26 less than she demanded (twice that if liquidated damages are considered) – hardly an eyebrow-raising shortfall.

The defendants cite none of the relevant cases and offer nothing beyond a fraction as argument. In light of the preceding discussion, the Court finds their conclusory position unsupported.

### 3. Interference with settlement.

The defendants argue the plaintiff "failed to seek an early and fair resolution of th[e] case." (Doc. 64 at 5). This Court has noted the "ample persuasive authority deeming it improper, unreasonable and non-compensable for a plaintiff's attorney to delay or sabotage an achievable settlement for the purpose of ratcheting up attorney's fees." *Lee*, 2013 WL 160452 at *7. But the defendants have not substantiated their assertion.

The defendants first complain that meaningful settlement discussions could not occur because the plaintiff would not provide them "any idea" when she was required to work off the clock without pay. (Doc. 64 at 6). But the defendants' own exhibits reflect that, when defense counsel requested this information (eleven days after the defendants were served with process), plaintiff's counsel responded within three hours that the uncompensated time occurred on days the defendants scheduled the plaintiff to work two shifts – a morning shift of three to six hours and an afternoon/evening shift of eight hours – with a few hours' gap in the middle. It was during these gaps that the plaintiff alleged she was required to work off the clock, and she asserted she worked about 2.5 hours a week off the clock in this fashion. (Doc. 64, Attachments). Perhaps the plaintiff did not list the precise weeks or days this occurred but, without contemporaneous notes (which the defendants do not allege she possessed), she could hardly be expected to provide such detail, especially since she had left the defendants' employment. (Doc. 51 at 2). Moreover, the defendants had in their possession the plaintiff's time records and any written work schedules, so from the information provided

they were in at least as good a position as the plaintiff to identify the weeks and days in question.[16] From the very outset, the defendants had more than enough information to investigate the case and attempt settlement, and they cannot blame any failure in that regard on lack of cooperation from the plaintiff.

In a related vein, the defendants complain that their efforts to investigate and settle the case early on were hampered by the refusal of a witness, identified by the plaintiff as favorable to her case, to speak with defense counsel by telephone. (Doc. 64 at 6). They make no effort to explain how the witness's silence can be blamed on the plaintiff; on the contrary, their own evidence reflects that plaintiff's counsel "had no problem" with defense counsel speaking with the witness. (*Id*., Attachments).

Finally, the defendants assert that "the only settlement Plaintiff was interested in involved a five figure payment of attorneys' fees to counsel." (Doc. 64 at 6). The defendants do not explain this statement, which the Court construes as a complaint that, by the time they finally became interested in settling, counsel's fees exceeded $10,000, a figure that presented a barrier to settlement. But increasing exposure to an award of attorney's fees is a necessary consequence of failing to settle the underlying claim (and a primary reason FLSA defendants may be well served by an early settlement); it is not a justification for cutting those fees upon resolution of the case.

### 4. Summary of adjustments.

The Court reduces the hours of each lawyer by 20% to account for time spent on the contract claim. This leaves Mr. Ladd with 54.0 hours, Ms. Ladd with

---

[16] The two-shift schedule lasted only from August 2011 to the end of September 2011 (when the plaintiff left employment) and involved only about two days a week. (Doc. 51 at 2). Moreover, the odd and lengthy workdays on which the uncompensated work occurred would stand out plainly on work schedules and time records. It could not have been difficult for the defendants to isolate the period in dispute once process was served in December 2011.

13.0 hours, Ms. Vitello with 75.5 hours, and Ms. Booth with 10.5 hours. Multiplied by their hourly rates, these hours generate an adjusted lodestar amount of $24,900.

**E. Costs.**

Nominally, the plaintiff seeks costs of $2,652.45. (Doc. 59 at 3). Both Mr. Ladd's affidavit and the attached billing records, however, identify costs as totaling $1,802.85. The plaintiff has not identified any basis for the higher figure, which will be disregarded.

While Section 216(b) provides for an award of costs, it does not identify specific items included within that term. Therefore, as noted by the defendants, costs under the FLSA are limited to those authorized in 28 U.S.C. § 1920. *Glenn v. General Motors Corp.*, 841 F.2d 1567, 1575 (11th Cir. 1988); *accord Mock v. Bell Helicopter Textron, Inc.*, 456 Fed. Appx. 799, 802 (11th Cir. 2012) ("[T]his Court has clearly held that cost recovery [under Section 216(b)] is limited by 28 U.S.C. § 1920.").

The plaintiff seeks recovery for postage and for copying. "[C]osts such as general copying [and] postage … are clearly nonrecoverable" under Section 1920. *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996). A court "d[oes] not err in disallowing the photocopying costs [when] Plaintiffs d[o] not present required evidence regarding the documents copied including their use or intended use." *Cullens v. Georgia Department of Transportation*, 29 F.3d 1489, 1494 (11th Cir. 1994). The plaintiff offers no such evidence or even a representation that her copying is other than the "general copying" for which reimbursement is unavailable. Thus, no costs for copies, or for postage, will be awarded.

The plaintiff seeks $849.60 for deposition and transcript fees. Many expenses associated with depositions may be taxed under Section 1920 in many situations. *See generally United States Equal Employment Opportunity Commission v. W&O, Inc.*, 213 F.3d 600, 621-22 (11th Cir. 2000). The plaintiff,

17

however, has presented no evidence and made no representation concerning the deposition(s) for which she seeks reimbursement, and the Court declines to assume in the absence of such evidence that all or any particular part of the cost is properly shifted to the defendants. The same is true for an $80.00 process server charge from September 2012.

The remaining cost items are the $350.00 filing fee and $395.00 in process server fees for serving trial subpoenas on seven trial witnesses. The defendants do not dispute these items, (Doc. 64 at 16), and they will be awarded.

**F. Summary.**

For the reasons set forth above, the plaintiff's fee petition, (Doc. 59), which the Court construes as a motion for an award of attorney's fees and costs, is **granted in part**. The Court awards reasonable attorney's fees in the total amount of $24,900.00 and costs in the amount of $745.00. To the extent the plaintiff seeks additional recovery of costs and fees, the motion is **denied**.

DONE and ORDERED this 30th day of July, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE